JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Michael Sutton ("appellant"), appeals the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm in part, reverse in part, and remand for resentencing.
 I. {¶ 2} According to the facts, on May 29, 2006, appellant, Kenny Phillips, Deante Creel, and Akeem Tidmore were riding together in a tan colored Chevrolet Caprice in the area of East 55th Street and Woodland Avenue in Cleveland, Ohio. Multiple shots were fired at a 1996 Lincoln Mark VIII from the Chevrolet Caprice. There were four individuals in the Lincoln. On the right side of the victims' automobile, Kevin Tolbert was sitting in the front passenger seat, and Len Brown was sitting directly behind him in the rear of the car. On the left side, Ken Tolbert was driving, and Chris Lovelady was seated directly behind the driver.
 {¶ 3} The Chevrolet pulled up on the left side of the victims' car, and rounds were fired into the driver's side of the Lincoln. The driver, Ken Tolbert, and passenger, Chris Lovelady, were both shot. The two victims went to the hospital where doctors determined that a bullet was lodged in Ken Tolbert's head. The bullet was successfully removed, but as a result of his injuries, Ken Tolbert lost most of the hearing in his left ear and sustained nerve damage and facial paralysis, preventing him from being able to fully smile or close his left eye. He also suffered from migraine headaches and a misaligned jaw. Chris Lovelady was struck in the left side of his head with a bullet that entered his cheek near his temple. Chris *Page 4 
immediately lost all of his vision. He eventually regained sight in his right eye, but is still blind in his left eye.
 {¶ 4} The police were in the immediate vicinity when the incident occurred and, therefore, responded without hesitation to the shooting. Officer Michael Keane, a ten-year veteran, testified that he was in his assigned zone car with his partner, Daniel Lentz, patrolling this area in the city's third district. Officer Keane testified that the area of East 55th and Woodland is considered a problem area. Specifically, Keane testified that on weekend nights, 18 to 25 year-olds gather from 3:00 to 5:00 a.m. after the nightclubs close. The police are always a presence in that area due to the large crowds, traffic problems, robberies, shootings, and drug complaints.[1]
 {¶ 5} On the night of May 28, 2006, and into the early morning of May 29, Keane was in his assigned zone car with Lentz. He was not assigned to the Woodland area where Officers Lundy and Jones were, but Keane was called there because of the exceptionally large crowd that night. As he drove north on East 55th Street toward Woodland Avenue, Keane observed a tan, older-model Chevrolet with the number "84" on it make a reckless U-turn, causing several other cars to swerve and stop. Keane started to weave through traffic to catch up to the Chevrolet in order to issue a ticket. Keane saw the vehicle turn right and head east on Woodland Avenue from a middle lane. *Page 5 
 {¶ 6} As Keane approached and made the same right turn onto Woodland Avenue, he heard a gunshot. Keane saw the vehicle he had been pursuing alongside another car, heard more gunshots, and simultaneously saw the muzzle flashes coming from the passenger's side of the vehicle he was pursuing. Keane testified that the left side of the Lincoln was closest to the Chevrolet. Keane identified photographs of the vehicle he pursued and from which he saw muzzle flashes as being the same tan colored Chevrolet Caprice with the number "84" on the side. The Chevrolet occupants, appellant, Creel, and Phillips were immediately pursued, caught, and arrested. Tidmore was arrested shortly thereafter.
 {¶ 7} Appellant was indicted of the following offenses:
 · count one, attempted murder in violation of R.C. 2923.02 and 2903.02 with one-, three-, and five-year firearm specifications;
 · count two, attempted murder in violation of R.C. 2923.02 and 2903.02 with one-, three-, and five-year firearm specifications;
 · count three, attempted murder in violation of R.C. 2923.02 and 2903.02 with one-, three-, and five-year firearm specifications;
 · count four, attempted murder in violation of R.C. 2923.02 and 2903.02 with one-, three-, and five-year firearm specifications;
 · count five, felonious assault in violation of R.C. 2903.11, with one-, three-, and five-year firearm specifications;
 · count six, felonious assault in violation of R.C. 2903.11, with one-, three-, and five-year firearm specifications;
 · count seven, felonious assault in violation of R.C. 2903.11, with one-, three-, and five-year firearm specifications;
 · count eight, felonious assault in violation of R.C. 2903.11, with one-, three-, and five-year firearm specifications; *Page 6 
 · count nine, felonious assault in violation of R.C. 2903.11, with one-, three-, and five-year firearm specifications;
 · count ten, felonious assault in violation of R.C. 2903.11, with one-, three-, and five-year firearm specifications;
 · count eleven, attempted felonious assault in violation of R.C. 2923.02 and 2903.11, with one-, three-, and five-year firearm specifications;
 · count twelve, attempted felonious assault in violation of R.C. 2923.02 and 2903.11, with one-, three-, and five-year firearm specifications;
 · count eighteen, inducing panic in violation of R.C. 2917.31;
 · count nineteen, inducing panic in violation of R.C. 2917.31;
 · count twenty, failure to comply with the order of signal of police officer in violation of R.C. 2921.331; and
 · count twenty-one, resisting arrest in violation of R.C. 2921.33.
 {¶ 8} Also indicted in this matter were codefendants Kenny Phillips, Deante Creel, and Akeem Tidmore. The case proceeded to a jury trial, at the conclusion of which appellant was found not guilty of resisting arrest and not guilty of all firearm specifications. The jury found appellant guilty of every other charge. Appellant was later sentenced to the maximum, consecutive sentence, totaling 46 1/2 years, plus a five-year period of postrelease control. Appellant now appeals.
 II. {¶ 9} Appellant's assignments of error provide the following: *Page 7 
 {¶ 10} "Defendant was denied due process of law when the court permitted an amendment to the indictment changing the date of the offense without resubmission to the grand jury."
 {¶ 11} "Defendant was denied his Sixth Amendment right to present a defense when the court would not secure the appearance of a defense witness, Willie Wayne Moore."
 {¶ 12} "Defendant was denied the right to present a defense when the court would not allow previous recorded statements from Willie Wayne Moore."
 {¶ 13} "Defendant was denied due process of law when the court allowed evidence of gunshot residue."
 {¶ 14} "Defendant was denied due process of law when the court instructed on aiding and abetting."
 {¶ 15} "Defendant was denied due process of law when the court overruled defendant's motions for judgment of acquittal."
 {¶ 16} "Defendant was denied due process of law when he was sentenced to a felony sentence for inducing panic."
 {¶ 17} "Defendant was denied due process of law when the court sentenced defendant for failure to comply as a felony of the third degree."
 {¶ 18} "Defendant was denied due process of law and subjected to a cruel and unusual punishment when the court sentenced defendant to consecutive sentences which amounted to forty-six and one-half (46 ½) years." *Page 8 
 {¶ 19} "Defendant was denied due process of law when the court did not merge and separately sentenced defendant on all counts of the indictment."
 {¶ 20} "Defendant was denied due process of law when he was sentenced for attempted murder rather than felonious assault and for felonious assault rather than attempted felonious assault."
 {¶ 21} "Defendant was denied effective assistance of counsel."
 III.
AMENDMENT OF INDICTMENT {¶ 22} Appellant argues in his first assignment of error that he was denied due process when the lower court permitted an amendment of the date of the offense alleged in his indictment.
 {¶ 23} Crim. R. 7 governs the amendment of indictments and provides the following:
 {¶ 24} "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."[2]
 {¶ 25} In the case at bar, the indictment originally alleged that the offenses occurred on May 26, 2006. Prior to jury selection, the state moved, over the defense's objection, to amend the indictment to indicate that the offenses occurred on May 29, 2006. The *Page 9 
amendment was allowed, and when the court read the indictment to the jury at the start of jury selection, the corrected date of May 29, 2006 was provided. In addition, when defense counsel renewed his objection to the amendment of the date in the indictment, the trial court stated, "So, for the record, I did overrule that. I find that it doesn't materially change the offense. It was amended by motion under Criminal Rule 7 during our last trial date and we will let the jury decide what, if anything, happened."[3]
 {¶ 26} Appellant argues that a change in the date of offense was a material change that should have been resubmitted to a grand jury. However, where time is not an element of the offense, an amendment changing the date alleged in an indictment does not prejudice the defendant. State v. Staples (1993), 88 Ohio App.3d 359. Moreover, an amendment to the date of the alleged offense does not affect an essential element of the crime charged nor does it involve the name or identity of the crime charged. State v. Ahedo (1984),14 Ohio App.3d 254; Staples, supra; State v. Price (1992), 80 Ohio App.3d 35; Parma v.Bambeck (Mar. 16, 1995), Cuyahoga App. No. 66946.
 {¶ 27} In the case at bar, appellant's rights have been fully protected. The amendment was made in advance of trial, appellant had notice of the amendment, the amendment did not affect appellant's defense, the amendment did not change the name or identity of the crime charged, and appellant suffered no prejudice.
 {¶ 28} Accordingly, appellant's first assignment of error lacks merit and is overruled. *Page 10 
RIGHT TO PRESENT A DEFENSE {¶ 29} Appellant argues in his second assignment of error that he was denied his Sixth Amendment right to present a defense when the court would not secure the appearance of Willie Wayne Moore.
 {¶ 30} The record shows that trial in this matter was scheduled, but continued twice so that the defense could secure their witness.[4]
When trial was reset for May 29, 2007, the court gave full and fair consideration to the defense counsel's request to issue an arrest warrant prior to denying it. Moore had not yet been served with a subpoena. However, the court did promise the defense that if Moore was served and did not appear, then a bench warrant would be issued.[5] InState v. Juenger, Butler App. No. CA2003-02-049, 2004-Ohio-796, a lower court's decision not to compel the appearance of a defense witness was upheld on appeal because the defense could not assure the trial court that the witness had actually been served with the subpoena. Id. at ¶ 30-36. Here, appellant was unable to assure the lower court that Moore was served with a subpoena and that Moore had notice of the trial; therefore, the trial court's refusal to issue an arrest warrant should be upheld. Appellant had the opportunity and, indeed, did present a defense.
 {¶ 31} Accordingly, appellant's second assignment of error is overruled. *Page 11 
 {¶ 32} For his third assignment of error, appellant contends that he was "denied the right to present a defense when the court would not allow previous recorded statements from Willie Wayne Moore." This assignment of error is frankly unintelligible to this court. We find no evidence in the record of a previously recorded statement of Moore. Pursuant to App. R. 16(A)(3) and (7) (i.e., failure to identify those portions of the record containing information that would aid this court in location and evaluating the previously recorded statements of Moore), we find this error devoid of merit.
 {¶ 33} The third assignment of error is overruled.
GUNSHOT RESIDUE EVIDENCE {¶ 34} Appellant argues in his fourth assignment of error that he was denied due process of law when the trial court permitted evidence of gunshot residue. Specifically, appellant argues that Martin Lewis, who testified about the residue, was not a properly qualified expert.
 {¶ 35} The record reveals, however, that when specifically asked about Lewis by the lower court, defense counsel did not object to Lewis' qualification as an expert witness.[6] Failure to object at the time of trial waives all but plain error. State v. Childs (1968),14 Ohio St.2d 56.
 {¶ 36} In order for an expert's testimony to comply with the requirements of Evid. R. 702(C), the expert's opinion must be reliable. In making this determination, the court focuses *Page 12 
on whether the principles and methods an expert employs to reach an opinion are reliable, not whether the conclusions are correct. Additionally, to be admissible, the expert testimony must assist the trier of fact in determining a fact issue or understanding the evidence.Miller v. Bike Athletic Co., 80 Ohio St.3d 607, 1998-Ohio-178.
 {¶ 37} The evidence presented demonstrated competency on the part of Lewis to testify as an expert. Lewis testified that he has a chemistry degree and has worked as a forensic analyst for seven years. He described what happens when a firearm is discharged, what gunshot residue is, and how gunshot residue can be collected and tested. Lewis stated that he has personally examined at least 1,200 residue samples. He described the steps taken to prevent contamination and ensure untainted results. He also described the advances that have been made in testing and what factors can explain positive or negative results.
 {¶ 38} Relative to the evidence in this case, Lewis testified that he conducted the tests and did find gunshot residue in the sample collected from Phillips' hand, as well as the sample collected from the front passenger's window area of appellant's car. Even Larry Dehus, the forensic scientist called on behalf of the defense, agreed with Lewis' conclusion that gunshot residue existed in the sample collected from Philips' hand. Hence, we do not find plain error in the court admitting gun shot residue evidence.
 {¶ 39} Accordingly, appellant's fourth assignment of error is overruled.
AIDING AND ABETTING INSTRUCTION {¶ 40} Appellant argues in his fifth assignment of error that he was denied due process of law when the trial court instructed the jury on aiding and abetting. An aiding-and-abetting *Page 13 
theory is when a person "acting with the kind of culpability required for the commission of an offense * * *" aids or abets another in committing the act. R.C. 2923.03(A)(2).[7] State v. Scott, Cuyahoga App. No. 87942, 2007-Ohio-528.
 {¶ 41} The state relied on R.C. 2923.03, the complicity statute, in this case. As the state proved its case against appellant using a complicity theory as permitted under Ohio law, the jury was properly instructed, and this assignment of error is without merit. At the close of the evidence when the jury was instructed on aiding and abetting, appellant did not object. It is a general rule that an appellate court will not consider any error which counsel for a party complaining of a trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. Childs, supra.
 {¶ 42} Assuming arguendo appellant had properly objected, appellant's argument is still without merit. It is a long-standing legal principal that in proving aiding and abetting, the principal offender need not be specifically identified. State v. Perryman (1976), 49 Ohio St.2d 14;State v. Hill (1994), 70 Ohio St.3d 25. "In order to convict an offender of *Page 14 
complicity, the state need not establish the principal's identity; pursuant to R.C. 2923.03(C), the state need only prove that a principal committed the offense." State v. Langford, Cuyahoga App. No. 80737, 2002-Ohio-6045, at ¶ 61, citing Perryman, supra.
 {¶ 43} In the case at bar, the evidence may not have established that appellant fired a gun himself. However, it did prove that he acted in complicity with the person who did (i.e., Kenny Phillips). Appellant admitted that he was driving his car along Woodland Avenue in the early morning hours of May 29, 2006. Kenneth Tolbert and Christopher Lovelady, who were in the car right next to appellant's on Woodland Avenue that morning, ended up getting shot. Gunshot residue was found on both appellant's car and on the hands of Kenny Phillips, the person that appellant admitted was in his car on that day. Appellant drove alongside of the victims' car and fled when chased by the police. Accordingly, sufficient evidence was presented to justify the jury instruction regarding whether appellant aided and abetted the principal offender in committing these offenses.
 {¶ 44} Accordingly, appellant's fifth assignment of error is overruled.
SUFFICIENCY OF THE EVIDENCE {¶ 45} Appellant argues in his sixth assignment of error that he was denied due process of law when the trial court overruled its motions for judgment of acquittal. Specifically, appellant argues that there was insufficient evidence to warrant a conviction on attempted murder, felonious assault, inducing panic, failure to comply, and aiding and abetting.
 {¶ 46} Crim. R. 29(A) states that a trial court "shall order the entry of a judgment of *Page 15 
acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." When reviewing sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492. The Supreme Court has determined that, in essence, sufficiency is a test of adequacy. State v. Robinson (1955),162 Ohio St. 486.
 Attempted Murder and Felonious Assault {¶ 47} Appellant argues that there was no evidence that he was personally responsible for any of the injuries to Kenneth Tolbert or Christopher Lovelady. Appellant further argues that there was no evidence that he did anything to encourage, participate in, promote, or plan these events.
 {¶ 48} There is direct testimony, however, from two Cleveland police officers who were eyewitnesses to the attempted murders. Both officers testified that they saw multiple gunshots coming from appellant's vehicle into the left side of the victims' vehicle, as the two cars were side-by-side on Woodland Avenue. Officer Keane testified that when the suspect's car pulled over, he saw appellant bail out of the driver's seat, and he then arrested appellant. The victims' vehicle was riddled with bullet holes and dents.
 {¶ 49} Moreover, appellant admitted he drove the Chevrolet Caprice, the vehicle that the gunshots originated from, on the date in question. Two of the victims in the Lincoln were shot. Gunshot residue was found on appellant's car and on the hands of one of the men *Page 16 
in appellant's car.
 {¶ 50} Accordingly, there is sufficient evidence to prove appellant participated in the event that resulted in indictments for attempted murder and the various counts of felonious assault.
 Inducing Panic {¶ 51} Appellant next argues that there is insufficient evidence to justify a finding of guilt upon two counts of inducing panic. He further argues that the counts should be subsumed within each other. Appellant, however, does not make any citation to the transcript, case law, or governing statute. Accordingly, pursuant to App. R. 16(A)(3), (6), and (7), his contention is without merit.
 Failure to Comply {¶ 52} Appellant next asserts that there is insufficient evidence of accident or serious physical harm to persons or property caused by the operation of the vehicle to support failure to comply. Appellant further argues that there is insufficient evidence that the vehicle caused a substantial risk of serious physical harm to person or property. Contrary to appellant's assertions, however, there is sufficient credible evidence that established that appellant fled from the police at a high rate of speed (i.e., 60-70 m.p.h.) upon a public thoroughfare. There was, therefore, sufficient evidence that his failure to comply caused a substantial risk of serious physical harm.
 Aiding and Abetting {¶ 53} The evidence demonstrated that appellant and his codefendants acted in *Page 17 
complicity with one another in their effort to shoot at the group of men in the victims' car. As a result of the defendants' actions, one bullet struck Lovelady in the head, one bullet struck Tolbert in the head, and the other bullets struck the side of the victims' car. As previously mentioned, appellant's conviction as a claimed aider and abettor is supported by sufficient evidence. Accordingly, the trial court properly denied appellant's motion for judgment of acquittal.
 {¶ 54} Accordingly, appellant's sixth assignment of error is overruled.
FELONY SENTENCE FOR INDUCING PANIC {¶ 55} Appellant argues in his seventh assignment of error that he was denied due process of law when he was sentenced to felony sentences in counts eighteen and nineteen for inducing panic. Appellant argues that he should have been sentenced to misdemeanors because the jury verdict did not contain the additional findings required under R.C. 2917.31(C)(2) to enhance the degree of the penalty for inducing panic from a misdemeanor to a felony.
 {¶ 56} R.C. 2945.75 states:
 "(A) When the presence of one or more additional elements makes an offense one of more serious degree:
 (1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.
 (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are *Page 18 
present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."
 {¶ 57} The Supreme Court of Ohio in State v. Pelfrey,112 Ohio St.3d 422, 2007-Ohio-256, held that "pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." Id. at 426. R.C. 2945.75
cannot be fulfilled by demonstrating additional circumstances, such as the verdict includes the language of the indictment, the verdict form incorporates the indictment, or by presenting evidence establishing the aggravating element at trial. Id.
 {¶ 58} Inducing panic is a fourth degree felony when the panic results in physical harm to a person. R.C. 2917.31(C)(3). The jury verdict form for count eighteen, inducing panic, stated the following in its entirety:
 {¶ 59} "We, the jury in this case being duly empaneled and sworn, do find the defendant, Michael Sutton, * * * guilty of inducing panic, in violation of R.C. 2917.31(A)(3) of the Ohio Revised Code, as charged in count nineteen of the indictment." The jury verdict form for count nineteen was nearly identical, changing only the last part of the statement to "as charged in count nineteen of the indictment."
 {¶ 60} In the case at bar, the jury's verdict did not state either the degree of the offense or the additional elements that make the offense of inducing panic a fourth degree felony. We note that the trial court's journal entry classifying the verdicts of guilty as "F4" does not *Page 19 
suffice in this case to render the offense a felony. Had the trial been a bench trial, the trial
court's notation of "F4" would have been sufficient. This case, however, was a jury trial. Because the jury was the trier of fact as to these charges, the jury verdict form must have included either the additional elements or the "F4" designation to render the verdict valid pursuant to R.C. 2945.75. Since neither requirement is present, "a guilty verdict constitutes finding of guilty of the least degree of the offense charged." R.C. 2945.75(A)(2). In this case, appellant can only be convicted of a first degree misdemeanor for counts eighteen and nineteen, the least degree under R.C. 2917.31(C)(2) for the offense of inducing panic.
 {¶ 61} Accordingly, we reverse appellant's conviction for inducing panic as charged in counts eighteen and nineteen and remand the cause to the lower court to enter a judgment convicting appellant of inducing panic as first degree misdemeanors and directing the court to proceed to sentence the misdemeanors appropriately.
 {¶ 62} Appellant's seventh assignment of error is sustained.
FELONY SENTENCE FOR FAILURE TO COMPLY {¶ 63} Appellant argues in his eighth assignment of error that he was denied due process when the court sentenced him for failure to comply as a felony of the third degree.
The indictment charged appellant as follows:
 "Unlawfully did operate a motor vehicle so as to willfully elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop. Furthermore, in committing the offense, the offender was fleeing immediately after the commission of a felony and/or the operation of the motor vehicle by the offender was the proximate cause of serious physical harm to persons or property and/or the operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to *Page 20 
persons or property."[8]
 {¶ 64} Evidence submitted at trial demonstrated that appellant drove his car in a reckless manner, and willfully eluded the police at great speed in close proximity to a densely crowded area.
 {¶ 65} Based on the evidence presented, we find that the jury was properly instructed with regard to failure to comply and the additional findings required. All twelve jurors signed the trial court's guilty verdict form in the proper manner. R.C. 2921.331(C)(5) does outline relevant factors for a court to consider in sentencing; however, it does not require the court to make any particular findings on the record. Accordingly, the absence of findings is not indicative of reversible error in this case.
 {¶ 66} The lower court simply sentenced appellant for the crimes that the jury found him guilty of; accordingly, appellant was not deprived of due process.
 {¶ 67} Appellant's eighth assignment of error is overruled.
CONSECUTIVE SENTENCES {¶ 68} Appellant argues in his ninth assignment of error that he was denied due process of law and subject to a cruel and unusual punishment when the court sentenced him to consecutive sentences. Appellant also argues that his sentence is grossly disproportionate to the severity of his offenses. We find appellant's argument has merit.
 {¶ 69} The Eighth Amendment to the United States Constitution prohibits punishment *Page 21 
that is grossly disproportionate to the severity of the offense.Ingraham v. Wright (1977), 430 U.S. 651, 667; Solem v. Helm (1983),463 U.S. 227. We consider the Eighth Amendment/proportionality issue in light of State v. Hairston, 118 Ohio St.3d 289, 2008-Ohio-2338, our newest Ohio Supreme Court pronouncement on the issue of sentencing.[9]Hairston states that the Eighth Amendment does not per se prohibit a sentence that in effect amounts to life in prison without the possibility of parole, [10] and holds that such a sentence is not violative of the Eighth Amendment when the individual sentences that make up the total sentence are not themselves inconsistent, unreasonable, or disproportionate. In Hairston, the Supreme Court justified an 134-year sentence because:
 {¶ 70} The crimes involved were three separate robbery/burglaries committed on September 27, October 10, and October 25, 2005;
 {¶ 71} Defendant was 24 years old, and had served two previous terms in prison for similar offenses;
 {¶ 72} The first burglary was committed seven days after his most recent release from prison;
 {¶ 73} The facts of the burglaries were aggravated: Hairston and two other males broke into inhabited homes in the early morning (between 6:00 and 7:00 a.m.) hours, terrorized the occupants, forced them to remove their clothing, tied them up, and threatened *Page 22 
to kill them with guns, and;
 {¶ 74} In each case, substantial personal property was stolen, including cars.
 {¶ 75} After a mid-trial plea of guilty, the court sentenced Hairston to the maximum penalty on each and every charge, and ran those penalties consecutively, for a total sentence of 134 years. The issue of whether allied offenses of similar import were included in the sentence was not reviewed by the Ohio Supreme Court; the high court reviewed only the proposition that a sentence that amounted to de facto "life without parole" was cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Section 9, Article 10, of the Ohio Constitution, and concluded that it was not.
 {¶ 76} Hairston, however, does not relieve the trial court of its "obligation to consider the overriding purposes of felony sentencing, the seriousness and recidivism factors, or the other relevant considerations set forth in R.C. 2929.11, 2929.12, and 2929.13."Hairston at ¶ 25. It simply directs the sentencing court to focus its analysis on each individual count, and not to be swayed by a sentence which, after due consideration of all statutory factors, may, when individually added up, amounts to a de facto life sentence.
 {¶ 77} A great deal of the Hairston analysis focuses on the fact that the sentence in that case reflected three individual crimes committed on three separate days, and the court's concern that not permitting consecutive sentences for different and separate crimes might, in fact, produce "the ridiculous consequence of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim."Hairston at ¶ 17, quoting Pearson v. Ramos (C.A.7, 2001), 237 F.3d 881,886. In short, Hairston does not dispense with a proportionality *Page 23 
or consistency review; it mandates it.
 {¶ 78} In fact, when considering the facts of Hairston's case as set forth above, it is apparent that the trial court in Hairston analyzed the appropriateness of the sentence in each and every count. It cannot be denied that the aggravated burglaries/robberies were some of the worst forms of the offenses, and further, that a defendant who has been to prison twice by age 24 for the same crimes and who continues to commit those crimes immediately upon his release, is one of the worst offenders and, hence, most likely to recidivate. Analysis under the statutes inexorably leads one to the propriety of a maximum consecutive sentence for Hairston under each count.
 {¶ 79} The same cannot be said for the trial court's sentence in this case. Here, we have one act: the shooting into the moving automobile. The multiple counts result not from separate acts, but rather from the fact that the automobile itself contained four persons. Two persons were injured, two were not. Defendant Sutton is 18 years old, a high school graduate, and had been accepted as a freshman at the University of Akron. He had no prior criminal record. He had never before been incarcerated. He was the driver of the automobile, not the "shooter." While the facts of this case are horrifying (two young men shot in the head), we do not discern that this case is any worse than other attempted murders where the attempt injured, but did not kill the victims.
 {¶ 80} As to the other two occupants of the car, sentences in their cases must be measured against sentences where the defendant shoots at, but does not injure others in the vicinity. We understand the great difficulty in analyzing these facts: any attempted murder is *Page 24 
horrifying. But our legislature has stated that there are some attempted murders that are appropriately punished by three years in prison, and others more appropriately punished by four, five, six, seven, eight, nine, or ten years in prison. Neither State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, nor Hairston has dispensed with the trial court's obligation to analyze the facts appurtenant to each individual count, nor to analyze whether the law demands certain counts be run consecutively or concurrently.
 {¶ 81} Sutton, an 18-year-old first-time offender[11] who committed one act on one day, by the sentence imposed herein (maximum consecutive on every count), has been sentenced identically as Hairston, a 24-year-old offender who had twice before been imprisoned, and who within days of his second release from prison, committed three more serious aggravated burglaries over a span of two months.[12] Sutton's sentence is not consistent, reasonable, or proportionate when viewed in light of cases and defendants like Hairston.
 {¶ 82} While the court no longer must make "findings" in support of its analysis, if a reviewing court finds no justification under law within the record for a particular sentence, then that sentence is contrary to law, and should be reversed and remanded for new sentencing. Neither Foster nor Hairston "blesses" maximum consecutive sentences nor insulates them from appellate review. *Page 25 
 {¶ 83} Accordingly, appellant's ninth assignment of error is sustained.
ALLIED OFFENSES {¶ 84} Appellant argues in his tenth and eleventh assignments of error that the court erred when it did not merge, but separately sentenced appellant on all counts of the indictment. Appellant further states that the court erred when he was sentenced for attempted murder rather than felonious assault and for felonious assault rather than attempted felonious assault. Appellant argues that attempted murder and the various felonious assaults are allied offenses of similar import, and that while the appellant may be found guilty of each charge, he may be "convicted" (found guilty and sentenced) only upon one.
 {¶ 85} The facts in this case are straightforward. On the evening in question, appellant and three other individuals, Kenny Phillips, Deante Creel, and Akeem Tidmore, were riding together in a Chevrolet Caprice. Police officers saw the Chevrolet pull alongside a Lincoln Mark VIII containing Ken Tolbert, Chris Lovelady, Kevin Tolbert, and Leonard Brown. The police witnessed gunshots coming from the Chevrolet. The driver of the Lincoln, Ken Tolbert, and one passenger, Chris Lovelady, sustained head injuries from the gunshots; the other two passengers were uninjured.
 {¶ 86} The grand jury issued the following indictment: four counts of attempted murder (attempted purposely to cause the death of another);[13] four counts of felonious assault *Page 26 
(knowingly causing or attempting to cause harm to another with a gun);[14] two counts of felonious assault (causing serious physical harm to another);[15] and two counts of attempted felonious assault (knowingly attempting to cause serious physical harm to another).[16]
There were other counts in the indictment, but they are not relevant to the issue before us here.
 {¶ 87} The jury found appellant guilty of all the above-described counts in the indictment. While the court sentenced appellant concurrently on all the various felonious assault charges, appellant argues that the felonious assault counts are allied offenses of similar import to attempted murder, and that he should not have been sentenced on those counts at all.
 {¶ 88} R.C. 2945.25 provides that "(A) when the same conduct of the defendants can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." For the last nine years, trial and appellate courts have struggled to determine when different counts are allied offenses of similar import utilizing the guidelines of State v. Rance, 85 Ohio St.3d 632, 1999-Ohio-291, with uneven results.
 {¶ 89} In April 2008, the Supreme Court of Ohio issued State v.Cabrales, *Page 27 118 Ohio St.3d 54, 2008-Ohio-1625, in an attempt to clarify Rance and thereby encourage uniformity among the trial and appellate courts.Cabrales holds that R.C. 2945.25 mandates a two-step analysis. In the first step, the elements of the crimes are compared in the abstract. If the elements of the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import. To the extent that courts believed under Rance that this comparison required a strict alignment of elements, Cabrales clarifies that this is not so; in Cabrales, the Supreme Court recommends a more "holistic" approach.
 {¶ 90} In State v. Smith, Hamilton App. No. C-060991, 2008-Ohio-2561, one of the first cases to utilize Cabrales, the court observed, "`it is absurd to insist' that a defendant could `constitutionally be sentenced' for two crimes when there was only one act and one victim. In this case, Smith committed one act against Varvados and one act against Taylor. Therefore, he could have been sentenced for only one crime against each victim." Id. at ¶ 27, quoting State v. Smith, Hamilton App. No. C-070216, 2008-Ohio-2469.
 {¶ 91} In the second prong on the Cabrales analysis, if the court finds that the crimes were committed separately or that there was a separate animus for each crime, then and only then, may the defendant be convicted of both offenses.
 {¶ 92} As to the first part of the analysis, we compare as follows: attempted murder is attempting to purposely cause the death of another. Felonious assault under R.C. 2903.11(A) is knowingly causing serious physical harm to another. Felonious assault under R.C. 2903.11(B) is knowingly causing or attempting to cause physical harm to another with a gun. *Page 28 Cabrales tells us that an exact alignment of the elements (as was required in Rance) is not
required. The issue then becomes whether shooting someone and hitting them in the head (two victims) and shooting at someone and missing them (two victims) are allied offenses of similar import to attempted murder (purposely trying to kill).
 {¶ 93} We hold here that shooting at someone and hitting them, but not killing them, and shooting at someone but not hitting them, are both manners in which these attempted murders were perpetrated. In fact, the various felonious assaults are subsumed in the attempted murders. Hence, the first prong (the elements of all the various felonious assaults charged here, if proved, would result in the commission of attempted murder) is satisfied.
 {¶ 94} The second prong of this inquiry is whether there was a separate animus to each of the felonious assaults; we hold there was not. There is one act — shooting the automobile. The fact that the automobile had four occupants resulted in single charges relating to each of the four victims, but the animus of the felonious assaults and the attempted murders was the same. Hence, we conclude that all of the felonious assaults are allied offenses of similar import to the attempted murders.[17]
 {¶ 95} Accordingly, appellant's tenth and eleventh assignments of error are sustained. *Page 29 
INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 96} Appellant argues in his twelfth assignment of error that he was denied effective assistance of counsel. In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Brooks (1986),25 Ohio St.3d 144, 25 Ohio B. 190, 495 N.E.2d 407.
 {¶ 97} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 17 Ohio B. 219, 477 N.E.2d 1128; Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 209 N.E.2d 164.
 {¶ 98} The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, that:
 "`When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.' State v. Lytle
(1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 57 L.Ed.2d 1154, 98 S.Ct. 3135. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052. * * *
 "Even assuming that counsel's performance was ineffective, this is not *Page 30 
sufficient to warrant reversal of a conviction. `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365, 66 L.Ed.2d 564, 101 S.Ct.665 (1981).' Strickland, supra, at 691. To warrant reversal, `the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *"
 {¶ 99} Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Bradley, supra at 141, 142.
 {¶ 100} It is with the above standards in mind that we now address appellant's arguments. Appellant argues that his attorney erred because he failed to properly investigate and prepare for trial, failed to object to jury instructions, and failed to object to sentencing issues. We do not find merit in any of appellant's arguments.
 {¶ 101} Appellant argues that his counsel was ineffective because he put on a witness without even talking to the witnesses. While Marsean Watters did testify that he never spoke with the defendants or their attorneys and that he never spoke to anyone about what he saw that night, that testimony was unreasonable in light of the fact that appellant, through counsel, summoned Watters to court that day. Watters' statements are further contradicted by the fact that, prior to trial, defense counsel indicated to the court that Watters
was one of several people who provided sworn statements, suggesting that the shooter was *Page 31 
someone other than these defendants.
 {¶ 102} The decision not to call a witness is a tactical trial decision that can easily be criticized on appeal because of hindsight. However, even debatable trial tactics and strategies do not necessarily amount to a denial of the right to effective assistance of counsel.State v. Clayton (1980), 62 Ohio St.2d 45.
 {¶ 103} Appellant's trial counsel was not ineffective for failing to object to the aiding-and-abetting jury instruction. As previously mentioned, the aiding-and-abetting jury instruction was accurate and appropriate in this case. Such an instruction is provided for and allowable under Ohio law. R.C. 2923.03; State v. Johnson,93 Ohio St.3d 240, 2001-Ohio-1336. In addition, appellant failed to prove that, had counsel objected to this instruction, the result of his trial would have been different.
 {¶ 104} Appellant's twelfth assignment of error is overruled.
Judgment affirmed in part, reversed in part, and remanded for resentencing.
It is ordered that appellee and appellant share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] Tr. 616-617, 639-641.
[2] See Crim. R. 7, The Indictment and the Information, subsection R. 7(D), amendment of indictment, information, or complaint.
[3] Tr. 443.
[4] See journal entries of Mar. 19, 2007 and Apr. 25, 2007.
[5] Tr. 330, 435.
[6] Tr. 918-919.
[7] R.C. 2923.03. Complicity provides the following: "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: (1) Solicit or procure another to commit the offense; (2) Aid or abet another in committing the offense; (3) Conspire with another to commit the offense * * *; (4) Cause an innocent or irresponsible person to commit the offense. (B) It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender. (C) No person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 of the Revised Code. * * *"
[8] See indictment filed June 8, 2006.
[9] Decided subsequent to briefing and argument in this matter.
[10] Otherwise a sentence available only in death-penalty cases.
[11] Because Sutton had never been sentenced to prison before, he was entitled to the statutory presumption under R.C. 2929.14(B) of a minimum sentence. That factor was not even alluded to or considered by the trial court in its sentencing colloquy.
[12] If a maximum consecutive sentence is the appropriate sentence for Sutton, what would the appropriate sentence be for Hairston, had he committed the same act?
[13] Appellant received one count of attempted murder for each occupant of the car. The charges contained various gun specifications.
[14] Appellant received one count of felonious assault for each occupant of the car. The charges contained various gun specifications.
[15] Appellant received one count for each of the injured occupants, Kenneth Tolbert and Chris Lovelady. The charges contained various gun specifications.
[16] Appellant received one count for each of the uninjured occupants, Kevin Tolbert and Leonard Brown. The charges contained various gun specifications.
[17] We suspect that the trial judge agreed; in sentencing this case, he ordered all the felonious assaults to run concurrently with the attempted murders, whereas all the attempted murders were run consecutively to each other, as were all other counts of the indictment. This panel notes that it sees numerous cases where trial judges find certain counts are allied offenses and proceed to sentence concurrently; while the outcome in the ultimate sentence may be the same, the appropriate manner of "merging" is to make a finding that the counts are allied offenses, proceeding to sentence only on the greater felony (in this case "felonies") and not sentencing at all upon the allied counts. *Page 1